**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GREAT LAKES INSURANCE SE,

     Plaintiff,

v.                                                                                    Civ. No. 20-344 JAP/JFR

JOHN DOE, RICHARD LUCERO, and
MONASTERY OF CHRIST IN THE
DESERT,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Great Lakes Insurance SE ("Great Lakes") filed a COMPLAINT FOR DECLARATORY JUDGMENT RELIEF ("Complaint") (Doc. 1) in which it seeks a declaration that it has no duty to defend or indemnify Defendant Richard Lucero ("Defendant Lucero") or Defendant Monastery of Christ in the Desert ("Defendant Monastery") in the state court lawsuit ("underlying lawsuit") brought against them by Defendant John Doe ("John Doe"). Doc. 1 at 13–14. Great Lakes and Defendant Monastery have filed cross-motions for summary judgment.[1] Having considered the parties' respective motions, responses, and replies, as well as the applicable law, the Court finds that GREAT LAKES INSURANCE SE'S MOTION FOR SUMMARY JUDGMENT (Doc. 28) should be GRANTED. The Court further finds that DEFENDANT MONASTERY OF CHRIST IN THE DESERT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. 31) should be DENIED.

---

[1] *See* GREAT LAKES INSURANCE SE'S MOTION FOR SUMMARY JUDGMENT ("Motion") (Doc. 28), and DEFENDANT MONASTERY OF CHRIST IN THE DESERT'S CROSS-MOTION FOR SUMMARY JUDGMENT ("Cross-Motion") (Doc. 31).

BACKGROUND

On October 23, 2019, John Doe filed a COMPLAINT FOR DAMAGES FOR PERSONAL INJURY, NEGLIGENCE, VICARIOUS LIABILITY, AND OTHER TORTIOUS CONDUCT ("John Doe's Complaint") against Defendant Lucero, Defendant Monastery, and others in New Mexico's First Judicial District Court. *See* Doc. 1-3. John Doe alleged that he was repeatedly raped by Defendant Lucero—his scouting youth group leader and supervisor at his place of employment—in the late 1960s and 1970s.[2] *See id.* at ¶¶ 13, 30, 32–48. He further alleged that he "is only now discovering and realizing the nature of Defendant Lucero's abuse, the effect it has had on him, and the fact that he sustained severe psychological injury as a result of Defendant Lucero's childhood sexual abuse." *Id.* at ¶ 51. In addition to bringing claims against Defendant Lucero for assault and battery and intentional infliction of emotional distress ("IIED"), *see id.* at ¶¶ 54–61, 88–83, John Doe brought claims against multiple other defendants[3], including Defendant Monastery, for negligence, vicarious liability, and IIED, *see id.* at 11–15.

As to Defendant Monastery, specifically, John Doe alleged:

> 26.   Defendant Lucero's youth group also engaged in considerable activities under the umbrella of Defendant Monastery. These included fundraising for religious activities conducted directly on behalf of Defendant Monastery and other activities to benefit the monks from Defendant Monastery, under Defendant Lucero's direction.

> 27.   The connection to Defendant Monastery provided significant power and control to Defendant Lucero over the boys in the group and cloaked him with the authority of Defendant Monastery for the same reasons set forth as to other Defendants.

---

[2] John Doe's Complaint does not identify precisely when the alleged rapes occurred but indicates that they occurred when John Doe "was a minor" and during the time when John Doe was a member of Defendant Lucero's youth group. *See* Doc. 1-3 at ¶¶ 35–48. John Doe's Complaint alleges that he first became acquainted with Defendant Lucero "[i]n the late 1960s" when he attended Camp Zia, a camp operated by the Boy Scouts and with which Defendant Lucero was affiliated. *See id.* at ¶¶ 12–13.

[3] In addition to Defendant Lucero and Defendant Monastery, John Doe's Complaint named as defendants Country Farm Supply, where John Doe and Defendant Lucero worked, *see* Doc. 1-3 at ¶ 30; Boy Scouts of America; and Sacred Heart – Española. *See* Doc. 1-3 at 1.

*Id.* at ¶¶ 26–27. As to all defendants other than Defendant Lucero, John Doe alleged that they were negligent in their screening, hiring, supervision, placement, and retention of Defendant Lucero "as an agent" and that their negligence "proximately caused harm to Plaintiff, as well as the damages and injuries resulting therefrom." *Id.* at ¶¶ 63, 76. John Doe additionally alleged that the other defendants "had the right and ability to control Defendant Lucero's conduct[,]" thereby making the other defendants "vicariously liable for the harm caused to [John Doe] by Defendant Lucero" or "liable for the conduct of Defendant Lucero under the legal theory of 'aided-in-agency'." Doc. 1-3 at ¶¶ 80, 85.

Great Lakes, which issued seven commercial insurance policies ("Policies") to Defendant Monastery covering the period spanning April 17, 2013 through April 17, 2020, *see* Doc. 1 at ¶ 11[4], filed the instant lawsuit on April 16, 2020, seeking a declaration that it has no duty under the Policies to defend or indemnify either Defendant Lucero or Defendant Monastery, *see id.* at 13. On July 10, 2020, Great Lakes filed its motion for summary judgment ("Motion"). *See* Doc. 28. On August 10, 2020, Defendant Monastery responded in opposition to the Motion, *see* Doc. 30[5], and concurrently filed its cross-motion for summary judgment, *see* Doc. 31[6]. Defendant Lucero, who stated in his answer to Great Lakes' Complaint that he "has not made a claim against Great Lakes" and therefore "takes no position with regard to the Complaint for Declaratory Judgment[,]"[7] has not responded to the Motion.

---

[4] *See also* the parties' JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN, Doc. 17 at 3 (indicating that the parties have stipulated that Great Lakes "issued a series of seven (7) commercial insurance policies to the Monastery" and that "[t]he effective period for the Policies spans from April 17, 2013 to April 17, 2020").
[5] DEFENDANT MONASTERY OF CHRIST IN THE DESERT'S RESPONSE IN OPPOSITION TO GREAT LAKES INSURANCE SE'S MOTION FOR SUMMARY JUDGMENT ("Response").
[6] Defendant Monastery's Cross-Motion relies on the arguments set forth in its Response and does not set forth any additional arguments regarding why it should be granted summary judgment.
[7] DEFENDANT RICHARD LUCERO'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT (Doc. 6).

STANDARD

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). On a party's motion for summary judgment, the Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider "all evidence in the light most favorable to the non-moving party."[8] *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). Interpretation of an insurance policy, like any contract, presents a pure question of law that is properly decided on summary judgment. *See Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 984 (N.M. 1997) ("The interpretation of an insurance contract is a matter of law about which the court has the final word.").

Because this is a diversity action, New Mexico substantive law applies in determining whether Great Lakes had a duty to defend Defendant Lucero, Defendant Monastery, or both in the underlying lawsuit. *See Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980) ("It is axiomatic that the substantive law of the State of New Mexico applies with respect to the issues involved in [a] federal declaratory relief action predicated upon complete diversity of citizenship, and requisite amount in controversy." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))). In New Mexico, "[t]he obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy." *Miller v. Triad Adoption & Counseling Servs., Inc.*, 65 P.3d 1099, 1102 (N.M. Ct. App. 2003). "Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy." *Lopez*

---

[8] Because the Court is deciding this case on Great Lake's Motion, the Court construes the evidence in the light most favorable to Defendant Monastery, the non-moving party. *See Buell Cabinet Co.,* 608 F.2d at 433 ("On a motion for summary judgment, we must construe the facts in a way most favorable to the nonmovant.").

*v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994). An "insurance company is obligated to defend when the complaint filed by the claimant alleges facts potentially within the coverage of the policy." *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017) (quotation marks and citation omitted). "[T]he insurer bears the burden of proving that there is no duty to defend, and any doubt about whether the allegations are within the policy coverage is resolved in the insured's favor." *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1274 (D.N.M. 2019) (quotation marks and citation omitted). But "the insurer has no duty to defend if the allegations in the complaint clearly fall outside the policy's provisions." *Guaranty Nat'l Ins. Co.v. C de Baca*, 907 P.2d 210, 214 (N.M. Ct. App. 1995).

"Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Hinkle v. State Farm Fire & Cas. Co.*, 308 P.3d 1009, 1014 (N.M. Ct. App. 2013) (alteration, quotation marks, and citation omitted). "An insurance contact should be construed as a complete and harmonious instrument designed to accomplish a reasonable end." *Lopez*, 870 P.2d at 747 (quotation marks and citation omitted). "If a policy is clear and unambiguous, then the court does not construe terms; it merely gives the terms their usual and ordinary meaning." *Dove*, 399 P.3d at 407 (quotation marks and citation omitted). In New Mexico, the purpose of an exclusionary provision in an insurance contract is "to restrict the scope of the policy beyond what would otherwise be covered." *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 650 (N.M. 2012). Although exclusionary provisions "must be narrowly construed," *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 396 (N.M. 1992), they must "be enforced so long as their meaning is clear and they do not conflict with statutory law," *Chavez v. State Farm. Mut. Auto. Ins. Co.*, 533 P.2d 100, 102 (N.M. 1975) (alteration, quotation marks, and citation omitted). "In determining the applicability of an exclusion, the focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Lopez*, 870 P.2d at 747 (alterations, quotation marks, and citation omitted).

At bottom, "[t]he test to determine a duty to defend is one of reason—whether the defense sought is for coverage which the insured desired to purchase and for which the insured paid premiums." *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 830 (D.N.M. 1994). "The ultimate determination should be one which is fair to all contracting parties." *Id.*

DISCUSSION

The central question before the Court is whether Great Lakes has a duty to defend Defendant Lucero, Defendant Monastery, or both in the underlying lawsuit. The Court addresses this question with respect to each defendant in turn.

I.   <u>Great Lakes has no duty to defend or indemnify Defendant Lucero.</u>

Coverage under the Policies, as well as the commensurate duty to defend against claims made under the Policies, extends to any "insured." *See* Doc. 28-1 at 68. The Policies' "Insuring Agreement" provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend *the insured* against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

Doc. 28-1 at 68 (emphasis added). The parties stipulated in their JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN (Doc. 17) that "Richard Lucero is not an insured under the Policies." Doc. 17 at 3. In answering the Complaint, Defendant Lucero stated that he has not made a claim against Great Lakes and takes no position in this declaratory judgment action. *See* Doc. 6. Defendant Lucero has not responded to the Motion and does not dispute that he is not an insured under the Policies. Because it is undisputed that Defendant Lucero is not an insured under the Policies, Great Lakes has no duty to defend or indemnify Defendant Lucero in the underlying lawsuit. *See Bernalillo Cty. Deputy Sheriffs Ass'n v. Cty. of Bernalillo*, 845 P.2d 789, 791

(N.M. 1992) ("If the allegations of the complaint clearly fall outside the provisions of the policy,

neither defense nor indemnity is required.").

II.     Great Lakes has no duty to defend or indemnify Defendant Monastery.

Great Lakes principally relies on the Polices' "MOLESTATION OR ABUSE

EXCLUSION" ("Exclusion") to establish that it has no duty to defend Defendant Monastery in

the underlying lawsuit. *See* Doc. 28 at 11–12;Doc. 35 at 10–12. The Exclusion provides, in relevant

part:

> 2.     Exclusions
> This insurance does not apply to 'bodily injury', 'property damage', or 'personal and advertising injury' arising out of:
> a.   The threatened or actual molestation or abuse of any person by:
>   i.   Any insured;
>   ii.  Any 'executive officer', director, or trustee of any insured;
>   iii. Any 'employee' of any insured;
>   iv.  Any 'volunteer worker' for any insured; or
>   v.   Any other person for whom any insured may be legally liable.
>
> . . .
>
> Molestation or abuse includes, but is not limited to, harmful physical contact, sexual action, or emotional injury resulting from harmful physical contact or sexual action. Sexual action includes, but is not limited to:
>
> a.   Interaction with a person which is objectively considered sexually oriented or motivated including physical touching;
>
> . . .
>
> f.   Any behavior with sexual connotation or purpose whether performed for sexual gratification, discrimination, intimidation, coercion or other reason.

Doc. 28-1 at 104. Fairly and reasonably construed, the Exclusion gives notice to the policyholder

that claims for injuries that arise out of acts of molestation committed by any person falling into

one of the enumerated categories of people in Exclusion 2.a.i–2.a.v are not within the coverage of

the bargained-for policy.

Great Lakes argues that John Doe's claims against Defendant Monastery in the underlying lawsuit arise out of Defendant Lucero's alleged molestation of John Doe and that because Defendant Lucero is "an individual for whom the Monastery may be legally liable," the Exclusion applies, thereby relieving Great Lakes of its duty to defend Defendant Monastery. *See* Doc. 28 at 11–12. Defendant Monastery does not dispute that the claims in the underlying lawsuit all arise out of alleged molestation by Defendant Lucero and even acknowledges that "Richard Lucero is accused of grievous sexual molestation[.]" Doc. 30 at 9. Rather, Defendant Monastery argues that Great Lakes' stipulation that Defendant Lucero is not an insured under the Policies renders the Exclusion inapplicable. *Id.* at 7. Defendant Monastery's argument rests on a strained, partial reading of the Exclusion and is unavailing.

The Exclusion precludes coverage for claims arising out of molestation committed by any of the following people: (1) any insured; (2) any executive officer, director, trustee, employee, or volunteer worker of any insured; *or* (3) "[a]ny other person for whom any insured may be legally liable." Doc. 28-1 at 104. Great Lakes' stipulation that Defendant Lucero is not an insured eliminates the first category of persons whose alleged acts of molestation are not covered under the Exclusion. Great Lakes does not argue otherwise. *See* Doc. 35 at 10–12. The stipulation arguably—though not necessarily—also eliminates the second category of persons to whose acts the Exclusion applies because "volunteer workers," which is debatably what Defendant Lucero was, as well as "executive officers," "directors," "trustees," and "employees," are considered "insureds" under the Policies. *See* Doc. 28-1 at 76. Defendant Monastery dedicates the majority of its response to arguing that because "volunteer workers" are considered "insureds" and because Great Lakes stipulated that Defendant Lucero is not an insured, Defendant Lucero is, necessarily, also not a "volunteer worker." *See* Doc. 30 at 7–11. In essence, Defendant Monastery reasons that if Defendant Lucero is also not a "volunteer worker," he does not fit into the second category of

persons whose conduct is clearly excluded from coverage. *See* Doc. 30 at 10 ("As a stipulated non-insured, Richard Lucero is <u>not</u> a 'volunteer worker.' Accordingly, this exclusion is inapplicable to him[.]").

Ultimately, the Court need not resolve the question of whether Defendant Lucero was a "volunteer worker" and thus within the second category of persons whose conduct is excluded from coverage under the Exclusion. That is because John Doe's Complaint, even construed in the light most favorable to Defendant Monastery, alleges facts that unequivocally bring Defendant Lucero within the third category of persons—"any other person for whom any insured may be legally liable"—whose alleged acts of molestation are excluded from coverage under the Policies. As to this basis for finding the Exclusion applicable, Defendant Monastery offers nothing more than a bald contention that "[i]f Richard Lucero is not a 'volunteer worker,' there is no other basis on which the Monastery could be legally responsible for his conduct." Doc. 30 at 10. That is simply not correct.

Nothing in John Doe's Complaint limits his claims against Defendant Monastery to a theory of liability predicated on Defendant Lucero's specific classification as a "volunteer worker." John Doe's Complaint generally alleges that Defendant Monastery is liable for harm caused by Defendant Lucero's alleged molestation of John Doe by virtue of the relationship that existed between Defendant Monastery and Defendant Lucero during the relevant period. John Doe's claims against Defendant Monastery are premised on his allegation that Defendant Monastery "provided significant power and control to Defendant Lucero over the boys in the group and cloaked him in the authority of the Defendant Monastery[.]" Doc. 1-3 at ¶ 27. John Doe's Complaint described Defendant Lucero as "an agent" of Defendant Monastery, *see* Doc. 1-3 at ¶¶ 63, 65, and claimed that Defendant Monastery is either vicariously liable because it "had the right and ability to control Defendant Lucero's conduct[,]" *id.* at ¶ 80, or "liable for the conduct of

Defendant Lucero under the legal theory of 'aided-in-agency'[,]" *id.* at ¶ 85. Regardless of what legal theory(ies) John Doe's claims proceed under, the Exclusion applies and precludes coverage under the Policies because John Doe's Complaint brings claims solely for injuries arising out of molestation by a person for whom he alleges Defendant Monastery not just *may* be but, indeed, *is* legally liable. *See* Doc. 28-1 at 104 (excluding from coverage "[a]ny other person for whom any insured may be legally liable"); *see also Lopez*, 870 P.2d at 747 ("In determining the applicability of an exclusion, the focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." (alterations, quotation marks, and citation omitted)). As such, the Court concludes that Great Lakes has no duty to defend or indemnify Defendant Monastery in the underlying lawsuit.[9]

CONCLUSION

IT IS THEREFORE ORDERED THAT:

    (1) GREAT LAKES INSURANCE SE'S MOTION FOR SUMMARY JUDGMENT
        (Doc. 28) is GRANTED.

    (2) Great Lakes is declared, as a matter of law, to have no duty to defend or indemnify
        Defendant Lucero or Defendant Monastery in the underlying lawsuit.

    (3) DEFENDANT MONASTERY OF CHRIST IN THE DESERT'S CROSS-MOTION
        FOR SUMMARY JUDGMENT (Doc. 31) is DENIED AS MOOT.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Defendant Monastery's Cross-Motion, which rests "on the same basis, and for the same reasons, set forth in" its response to Great Lakes' Motion, *see* Doc. 31 at 1, is rendered moot by this conclusion.